UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
JENNIFER HOROWITZ,

                    Plaintiff,

          - against -

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-2351 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Jennifer Horowitz brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of her claim for Disability Insurance Benefits ("DIB") on March 26, 2020. The parties have cross-moved for judgment on the pleadings. (Dkts. 15, 18.) For the reasons below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's motion. The case is remanded for further proceedings consistent with this Memorandum and Order.

## BACKGROUND

### I.    Procedural History

On August 10, 2016, Plaintiff filed an application for DIB, claiming that, since June 22, 2015, she had been disabled due to mini stroke, vertigo, dizziness, blood clot disorder, genetic mutations, herniated disc in her neck and back, fibromyalgia, lupus, irritable bowel syndrome, asthma, arthritis, depression, insulin resistance, polycystic ovarian disorder, and Lyme disease. (Administrative Transcript ("Tr."[1]), Dkt. 11, at 19, 270.) The state agency denied her claim on

---

[1] Page references prefaced by "Tr." refer to the continuous pagination of the Administrative Transcript and not to the internal pagination of the constituent documents or the pagination generated by the Court's CM/ECF docketing system.

November 17, 2016.  (*Id.* at 19, 140–47.)  Plaintiff requested and appeared for a hearing before an administrative law judge ("ALJ") on February 26, 2019.  (*Id.* at 19, 41–65.)  By decision dated March 13, 2019, ALJ Gina Pesaresi found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act").  (*Id.* at 19–33.)  The SSA Appeals Council denied Plaintiff's request for a review of the ALJ's decision on March 26, 2020.  (*Id.* at 1–6.)  Thereafter, Plaintiff timely commenced this action.[2]

## II.     The ALJ's Decision

### A.     The Five-Step Inquiry

In evaluating disability claims, the ALJ must conduct a five-step inquiry.  The plaintiff bears the burden of proof at the first four steps of the inquiry, and the Commissioner bears the burden at the final step.  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted). First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If the answer is yes, the plaintiff is not disabled.  *Id.*

---

[2] Under Section 405(g),

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless [Plaintiff] makes a reasonable showing to the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on March 31, 2020 (*i.e.*, five days after Plaintiff's request to appeal the ALJ's decision was denied on March 26, 2020) and that Plaintiff's filing of the instant action on May 26, 2020—56 days later—was timely.  (*See generally* Complaint, Dkt. 1.)

If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." *Id.* § 404.1522(a). If the plaintiff does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled. *Id.* § 404.1520(a)(4)(ii).

If the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 404.1520(a)(4)(iii); *see also id.* pt. 404, subpt. P, app. 1. If the ALJ determines at step three that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* § 404.1520(a)(4)(iii).

If the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC")[3] before continuing to steps four and five. To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 404.1545(a)(1). The ALJ is responsible for assessing the plaintiff's RFC "based on all the relevant evidence in the case record." *Pellot v. Comm'r of Soc. Sec.*, No. 18-CV-3337 (AMD), 2019 WL 3500919, at *1 (E.D.N.Y. July 31, 2019) (citation omitted). The ALJ will

---

[3] "[A]n individual's RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (per curiam) (citation and quotations omitted). "[A] claimant is not disabled if her 'residual functional capacity and vocational abilities make it possible for her to do work which exists in the national economy, but she remains unemployed because of her inability to get work,' or because of 'the hiring practices of employers,' or because [Plaintiff] 'would not actually be hired to do work she could otherwise do.'" *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting 20 C.F.R. § 416.966(c)(1), (3), (7)) (alterations omitted).

then use the RFC finding in step four to determine if the plaintiff can perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* If the plaintiff cannot, or if no past relevant work exists, the ALJ will proceed to step five and determine whether the plaintiff, given his or her RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 404.1520(a)(4)(v). If the answer is yes, the plaintiff is not disabled; otherwise, the plaintiff is disabled and is entitled to benefits. *Id.*

### B.     The ALJ's Decision

At step one, the ALJ here determined that Plaintiff had not engaged in substantial gainful activity "since June 22, 2015, the alleged onset date." (Tr. at 22.) At step two, the ALJ determined that Plaintiff had the following severe impairments: "asthma, lumbar spine disorder with disc herniation and tear at L4-S1, fibromyalgia, right plantar fasciitis and tenosynovitis,[4] antiphospholipid syndrome,[5] transient ischemic attacks (mini-strokes), depression, and anxiety." (*Id.*) The ALJ noted that these impairments "impose more than minimal limitations regarding [Plaintiff's] overall functioning." (*Id.*) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the listed impairments in the Listings. (*Id.* at 22–24.) At step four, the ALJ determined that Plaintiff "is unable to perform any past relevant work." (*Id.* at

---

[4] According to the U.S. National Library of Medicine, "Tenosynovitis is inflammation of the lining of the sheath that surrounds a tendon (the cord that joins muscle to bone)." MedlinePlus: Tenosynovitis, U.S. NATIONAL LIBRARY OF MEDICINE, https://medlineplus.gov/ency/article/001242.htm (last visited Aug. 19, 2021).

[5] According to the U.S. National Library of Medicine, "Antiphospholipid syndrome is a disorder characterized by an increased tendency to form abnormal blood clots (thromboses) that can block blood vessels." MedlinePlus: Antiphospholipid syndrome, U.S. NATIONAL LIBRARY OF MEDICINE, https://medlineplus.gov/genetics/condition/antiphospholipid-syndrome/ (last visited Aug. 19, 2021).

31.)  But at step five, the ALJ found that Plaintiff "has the residual functional capacity to perform sedentary work as defined in [20 C.F.R. §§ 404.1567(a) and 416.967(a)]," because she "can frequently use her hands" and "perform simple 1-2 step tasks with only occasional interaction with supervisors and coworkers."  (*Id.* at 24–25.)  The ALJ noted, however, that Plaintiff "should never interact with the public."  (*Id.* at 25.)

Although the ALJ acknowledged that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," the ALJ found that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  (*Id.* at 25–26.)  "Concerning her mental symptoms," the ALJ noted that "[Plaintiff] presented to providers with complaints of anxiety and depression with reports of poor concentration, impaired memory, low energy, sleep disturbances, panic attacks, nervousness, overwhelming feelings, and inability to tolerate crowds."  (*Id.* at 27.)  "However, despite [Plaintiff's] statements about the intensity, persistence, and limiting effects of her symptoms," the ALJ concluded that "the objective medical evidence [did] not support [Plaintiff's] subjective complaints."  (*Id.*)  The ALJ explained that, "[b]ased upon the aforementioned, the objective evidence supports the above residual functional capacity" because "[Plaintiff] had only some objective findings or limitations," and "[a]lthough [Plaintiff] may experience some symptoms and limitations related to her condition, the objective evidence showed only mild to moderate findings."  (*Id.*)  According to the ALJ, therefore, "[Plaintiff] would have the ability to perform sedentary level work activities with some additional limitations."  (*Id.*)

Next, the ALJ considered the opinion evidence.  First, the ALJ gave "partial weight" to the findings in Plaintiff's "consultative physical examination, which Emmanuel Gelin, M.D.,

administered."  (*Id.*)  The ALJ then gave "partial weight" to the opinion of "State agency psychologist T. Inman-Dundon, Ph.D.," who "reviewed [Plaintiff's] records and opined that [Plaintiff] had mild limitations in activities of daily living, moderate limitations in social functioning, moderate limitations in concentration, persistence, or pace, and no episodes of decompensation." (*Id.* at 28 (citation omitted).)

Next, the ALJ considered Plaintiff's "consultative psychological evaluation, which Brickell Quarles, Ph.D., administered."  (*Id.* at 29 (citation omitted).)

> Initially, Dr. Quarles noted that [Plaintiff] reported that she feels depressed and anxious, and that her symptoms include crying spells, fatigue, agitation, panic attacks, and problems remembering. As for objective findings, Dr. Quarles' evaluation of [Plaintiff] revealed that she was cooperative with logical and relevant thoughts, and Dr. Quarles noted that [Plaintiff] did not exhibited [sic] any suicidal/homicidal ideations, delusions, or psychotic thoughts. Dr. Quarles also noted that [Plaintiff] recalled the current year and President, but she could not identify events surrounding September 11. Dr. Quarles further noted that [Plaintiff] exhibited fair judgment/insight and fair abstract thinking, and that [Plaintiff] could complete two out of three steps in serial 7s. Dr. Quarles additionally found that [Plaintiff] could recall [one out of three items] after a delay, spell the word "world," and complete simple division and addition questions. Dr. Quarles diagnosed [Plaintiff] with panic and mood disorders, and Dr. Quarles concluded that [Plaintiff] had moderate to severe limitations in completing simple and complex task. Dr. Quarles also determined that [Plaintiff] likely had moderate to severe limitations in her ability to interact appropriately with co-workers, supervisors, and the public. Dr. Quarles further opined that [Plaintiff] would likely have difficulties in maintaining a regular work schedule.

(*Id.* (citations omitted).)

The ALJ gave "little weight to Dr. Quarles' opinion because it [was] inconsistent with other objective evidence in the record and Dr. Quarles' objective findings."  (*Id.*)  The ALJ reasoned that, "[f]or example, mental status examinations show that [Plaintiff] exhibited intact cognitive functioning, fair attention/concentration, intact memory functioning, and fair insight/judgment." *Id.* (citations omitted.)  "Similarly, Dr. Quarles found that [Plaintiff] exhibited fair judgment/insight and fair abstract thinking, and that [Plaintiff] could complete two out of three

steps in serial 7s." (*Id.* (citation omitted).)  "As such," the ALJ concluded, "Dr. Quarles' own objective findings [did] not support the opinion provided." (*Id.*)

Next, the ALJ considered the "opinions from [Plaintiff's] treating sources." (*Id.* at 30.) The ALJ gave "little weight" to (1) a letter submitted by Robert Fafalak, M.D., [Plaintiff's] hematologist that "stated that [Plaintiff] suffered from antiphospholipid syndrome, fibromyalgia, asthma, and fatigue, and that [Plaintiff] would be unable to work due to her condition"; (2) letters from Cary Chapman. M.D., Ravi Salickram, RPA-C, and Igor Stiler, M.D., "opining that [Plaintiff] was totally disabled or would be unable to work"; (3) "Dr. Chapman and Dr. Stiler['s] additional[] state[ment] that [Plaintiff] was totally, temporarily disabled (100%)"; and (4) Dr. Stiler['s] further determin[ation] that [Plaintiff] would be unable to sit or stand in one position more than 5-10 minutes without having increased neck or back pain." (*Id.* (citations omitted).)

The ALJ then considered the opinion of Dr. Prabhakaran Rangaswamy, "[Plaintiff's] professional for his [sic] mental symptoms, . . . wherein Dr. Rangaswamy stated that [Plaintiff] suffers from depression and anxiety." (*Id.* (citation omitted).)  Dr. Rangaswamy noted that "[Plaintiff] experiences panic attacks, low energy, sleep disturbances, poor concentration/memory, nervousness, limited insight/judgment, and low self-esteem," and opined that (1) "[Plaintiff] would have limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation"; (2) "that [Plaintiff] would have problems adapting to changes, and that [Plaintiff] normally isolates herself from social interactions"; and (3) "that [Plaintiff] would have memory and concentration limitations, and . . . should be on temporary disability for at least 12 months." (*Id.* at 30–31 (citations omitted).)  The ALJ gave "little weight to Dr. Rangaswamy's opinion because he did not provide an in-depth function-by-function analysis of [Plaintiff's] abilities and limitations, and Dr. Rangaswamy's opinion [was] inconsistent with the overall

evidence." (*Id.* at 31.)  The ALJ reasoned that, "[f]or example, Dr. Rangaswamy's mental status examinations of [Plaintiff] show that she exhibited intact cognitive functioning, fair attention/concentration, intact memory functioning, and fair insight/judgment." (*Id.* (citations omitted).)

The ALJ then "asked the vocational expert whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]." (*Id.* at 32.)  "The vocational expert testified that [Plaintiff] would be able to perform the requirements of" three representative occupations: addresser, dowel inspector, and final assembler.  (*Id.*)  The ALJ concluded that "the [RFC] assessment is supported by the evidence of record as a whole, which demonstrates that [Plaintiff] has the ability to perform sedentary level work activities with no more than moderate mental limitations." (*Id.* at 31.)  Given these findings, Plaintiff's "age, education, work experience, and [RFC]," the ALJ determined that "[Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 33.)  The ALJ concluded, therefore, that Plaintiff was not disabled during the claimed period of disability.  (*Id.*)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits.  42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (citation omitted).  "Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (brackets omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (citation omitted).  But courts must "defer to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citation omitted).  If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.  42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (per curiam).

## DISCUSSION

Plaintiff contends that the ALJ's RFC determination suffers from the following legal errors: (1) the ALJ failed to properly weigh Dr. Rangaswamy's opinion in accordance with the treating physician rule; and (2) the ALJ failed to properly develop the record.  (Plaintiff's Motion for Judgment on the Pleadings ("Pl. Br."), Dkt. 15, at ECF[6] 22, 33.)  For the reasons below, the Court grants Plaintiff's motion and remands the case for the ALJ to reconsider the opinion evidence and develop the record as needed.  *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *13 (E.D.N.Y. Sept. 28, 2017) ("In addition to its authority to affirm, modify, or reverse a final decision, the Court may remand the case for the ALJ to further develop the record, resolve conflicts and ambiguities, or elucidate his or her rationale.").

## I.     The ALJ Failed to Follow the Treating Physician Rule

Plaintiff argues that the ALJ failed to follow the treating physician rule with respect to her mental impairments.  The Court agrees.

---

[6] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

## A.    The Treating Physician Rule

"Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).[7] "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Id.* "The opinion of a claimant's treating physician . . . is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is [consistent] with the other substantial evidence in the case record." *Id.* (citation, quotations, and brackets omitted); *see also* 20 C.F.R. § 404.1527(c)(2).

"Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Estrella*, 925 F.3d at 95. "In doing so, it must explicitly consider" (1) "the frequency, length, nature, and extent of treatment;" (2) "the amount of medical evidence supporting the opinion;" (3) "the consistency of the opinion with the remaining medical evidence;" and (4) "whether the physician is a specialist." *Id.* at 95-96 (citations, quotations, and brackets omitted); *see also* 20 C.F.R. § 404.1527(c)(2). "An ALJ's failure to 'explicitly' apply the [four] factors when assigning weight at step two is a procedural error." *Estrella*, 925 F.3d at 96 (citation omitted). In such cases, a court must remand unless the ALJ has "provided good reasons for its weight assignment," *id.* (citation, quotations, and brackets omitted), or unless "a searching review of the record . . . assures [the court] that the substance of the treating physician rule was not traversed," *id.* (citation and quotations omitted). Thus, "[a]t both steps, the ALJ must give good reasons in its notice of determination or decision for the weight

---

[7] The treating physician rule applies to claims filed before March 27, 2017, which includes Plaintiff's claim here. *See* 20 C.F.R. §§ 404.1527, 416.927 (2017); *see also Herr o/b/o Greis v. Com'r of Soc. Sec.*, No. 19-CV-815S (WMS), 2020 WL 2468415, at *3 (W.D.N.Y. May 13, 2020).

it gives the treating source's medical opinion." *Id.* (citations, quotations, and brackets omitted); *see also* 20 C.F.R. § 404.1527(c)(2)). Courts "do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

In contrast to their review of opinions from treating physicians, "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013). And "[w]here . . . there are conflicting opinions between the treating and consulting sources, the 'consulting physician's opinions or report should be given limited weight.'" *Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 78 (2d Cir. 2012) (summary order) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990)).

### B.   Analysis

The ALJ failed to apply the treating physician rule with respect to Dr. Rangaswamy. First, the SSA failed to explicitly consider "the frequency, length, nature, and extent of treatment" or "whether [Dr. Rangaswamy] is a specialist." *Estrella*, 925 F.3d at 95-96 (citations, quotations, and brackets omitted). In fact, the ALJ made no mention of the length of treatment, characterized the "nature" of Dr. Rangaswamy's role vaguely as "[Plaintiff's] professional for his [sic] mental symptoms," and incorrectly referred to Dr. Rangaswamy as a psychologist ("Ph.D.") rather than a psychiatrist ("M.D."). (*See* Tr. at 30–31.) This was a procedural error. *See, e.g.*, *See, e.g.*, *Brady v. Colvin*, No. 14-CV-5773 (ADS), 2016 WL 1448644, at *11 (E.D.N.Y. Apr. 12, 2016) (remanding for failure to apply the treating physician rule in part because the ALJ "did not consider the amount of time [the treating physician] saw the [p]laintiff . . . [or] consider [the treating physician's] status as a specialist in evaluating his opinion"); *Martin v. Berryhill*, No. 17-CV-08640 (VSB) (SN), 2019 WL 1756434, at *4 (S.D.N.Y. Feb. 20, 2019) (remanding because, among other things, "the ALJ failed to discuss the nature and extent of [the treating physician's]

treatment relationship with [the] [p]laintiff"), *report and recommendation adopted*, No. 17-CV-8640 (VSB) (SN), 2019 WL 1755425 (S.D.N.Y. Apr. 19, 2019).

Defendant argues that the reference to Dr. Rangaswamy as a psychologist was "no more than scrivener's error." (Def. Br., Dkt. 18-1, at 17.)  But Defendant provides no support for this theory.  The mistake was just as likely substantive.  Defendant also contends that, "in any event, the ALJ recognized Dr. Rangaswamy's specialization in treatment of mental health impairments." (*Id.*)  But this vague reference does not show sufficient consideration of Dr. Rangaswamy's status as a specialist in weighing his opinion.  *See Campbell v. Comm'r of Soc. Sec.*, No. 19-CV-4516 (JLC), 2020 WL 4581776, at *21 (S.D.N.Y. Aug. 10, 2020) (remanding because "[a]lthough the ALJ stated that 'the claimant saw a therapist and psychiatrist for mental health treatment' and otherwise noted [that doctor's] title as a psychiatrist, she failed to explicitly consider that [the doctor] was a specialist in weighing her opinion, as required." (record citation omitted)); *Veresan v. Astrue*, No. 06-CV-5195 (JG), 2007 WL 1876499, at *5 (E.D.N.Y. June 29, 2007) (failure to "indicate what weight, if any, was given to the fact that [the plaintiff's] doctors [were] specialists" made it impossible "to determine the extent to which the ALJ considered those factors in reaching its determination"); *Newell v. Saul*, No. 19-CV-10831 (JLC), 2021 WL 608991, at *19 (S.D.N.Y. Feb. 17, 2021) ("Although the ALJ identified [the plaintiff's doctor] as a psychiatrist twice, these passing references fall short of meeting his obligation to explicitly consider this [] factor." (citation omitted)).

Defendant also argues that the ALJ adequately considered the length of treatment because she "cited 18 treating notes from Dr. Rangaswamy covering a three-year period, clearly indicating that she understood his treating relationship with Plaintiff." (Def. Br., Dkt. 18-1, at 17–18.)  But the record shows that Dr. Rangaswamy treated Plaintiff for almost seven years, more than twice

the time the ALJ tangentially referenced.  (*See, e.g.*, Tr. at 771.)  And regardless, the ALJ's mere

reference to materials that happen to contain dates of treatment is not "explicit[] consider[ation]"

of the significance of the length of treatment.    *See Estrella*, 925 F.3d at 95-96; *cf. Sarchese v.*

*Barnhart*, No. 01-CV-2172 (JG), 2002 WL 1732802, at *5 (E.D.N.Y. July 19, 2002) (remanding,

in part because "the length of the relationship was mentioned only in passing in the ALJ's opinion"

(citation omitted)); *Campbell*, 2020 WL 4581776, at *21 ("Although she addressed the frequency

of treatment provided by [the plaintiff's treating psychiatrist] ('one to three month intervals') and

described the treatment as 'psychiatric,' the ALJ failed to explicitly consider the length of the

treatment (2015 to 2018) and did not provide any discussion of the nature and extent of [plaintiff's]

treatment relationship with [the doctor]." (citations omitted)); *but see Murabito v. Colvin*, No. 15-

CV-2807 (SJF), 2016 WL 6302089, at *9 (E.D.N.Y. Oct. 27, 2016) ("The ALJ referred to [the

plaintiff's doctor's] treatment notes and cited an exhibit indicating that [the doctor] had treated

Plaintiff approximately nine (9) times over a fourteen (14)-month period, thus considering the

length and frequency of the treatment relationship.").

"Because the ALJ procedurally erred, the question becomes whether a searching review of

the record assures [the Court] that the substance of the [treating physician] rule was not traversed—

i.e., whether the record otherwise provides good reasons for assigning 'little weight' to Dr.

[Rangaswamy's] opinion."  *Estrella*, 925 F.3d at 96 (citation, quotations, and brackets omitted).

The Court finds that it does not.

As the ALJ explained, "Dr. Rangaswamy stated that [Plaintiff] suffers from depression and

anxiety."  (*Id.* (citation omitted).)  Dr. Rangaswamy also observed that "[Plaintiff] experiences

panic attacks, low energy, sleep disturbances, poor concentration/memory, nervousness, limited

insight/judgment, and low self-esteem."  (Tr. at 30.)  The doctor opined that Plaintiff (1) "would

have limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation"; (2) "would have problems adapting to changes"; (3) "normally isolates herself from social interactions"; and (4) "would have memory and concentration limitations, and that [Plaintiff] should be on temporary disability for at least 12 months." (*Id.* at 30–31 (citations omitted).)  The ALJ gave "little weight to Dr. Rangaswamy's opinion because he did not provide an in-depth function-by-function analysis of [Plaintiff's] abilities and limitations, and Dr. Rangaswamy's opinion [was] inconsistent with the overall evidence." (*Id.* at 31.)  The ALJ reasoned that, "[f]or example, Dr. Rangaswamy's mental status examinations of [Plaintiff] show that she exhibited intact cognitive functioning, fair attention/concentration, intact memory functioning, and fair insight/judgment." (*Id.* (citations omitted).)

But the ALJ's rationale for discounting Dr. Rangaswamy's opinion does not satisfy the "good reasons" standard.  "First, a lack of function-by-function analysis by Dr. [Rangaswamy] is not a good reason for discounting his opinion." *See Parker v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-3814 (PAE) (HBP), 2019 WL 4386050, at *8 (S.D.N.Y. Sept. 13, 2019).  As discussed below, "[i]nstead of largely disregarding Dr. [Rangaswamy]'s entire opinion, the ALJ, consistent with her duty to develop the record, should have affirmatively sought such a function-by-function analysis from him." *Id.* (also noting that "[h]aving identified the lack of a function-by-function analysis from a treating physician in the record, the ALJ also could have sought a function-by-function analysis from other apparent treating physicians.") (citations omitted).

Second, despite minor inconsistencies between Dr. Rangaswamy's treatment notes and his subsequent opinion (*compare* Tr. 389, 392, 395, 398, 401, 404, 407, 410, 413, 416, 419, 422, 426, 430 (observing that Plaintiff's memory and cognitive functioning were "grossly intact," and her attention and concentration were "fair"); *with id.* at 771–72 (opining that Plaintiff "appears to have

difficulty [with] focusing [and] concentrating on conversation/present task," has "difficulty [with] concentration for more than a few minutes," and has an "impaired" memory "at times")), additional medical evidence in the record supported Dr. Rangaswamy's conclusions.  For example, Dr. Quarles reported that Plaintiff was not able to recall the events of September 11, 2001 and remembered only "one out of three items after a short delay."  (Tr. at 824.)  Although "ALJs should not rely heavily on the findings of consultative physicians after a single examination," *Selian*, 708 F.3d at 419, such as Dr. Quarles, the consistency between Dr. Rangaswamy and Dr. Quarles tends to undermine the ALJ's conclusion that the Dr. Rangaswamy was an outlier.

Further, given the ALJ's concern about this issue, she could have requested more information from Dr. Rangaswamy to reconcile any internal inconsistency.  *See, e.g., Karki v. Colvin*, No. 13-CV-06395 (SLT), 2017 WL 728225, at *17 (E.D.N.Y. Feb. 23, 2017) (remanding, in part because "there [was] no indication that the ALJ made any attempt to resolve [an identified] inconsistency and, thereby, fully develop the record"); *Samaru v. Comm'r of Soc. Sec.*, No. 18-CV-06321 (KAM) (LB), 2020 WL 3051576, at *13 (E.D.N.Y. June 8, 2020) (remanding, in part because, "given the ALJ's finding that [the plaintiff's treating physician's] opinion was internally inconsistent with his treatment notes and/or inconsistent with other evidence in the record, the ALJ should have explained his finding and re-contacted [the treating physician] to further develop or reconcile the record"); *Viverito v. Colvin*, No. 14-CV-7280 (JFB), 2016 WL 755633, at *14 (E.D.N.Y. Feb. 25, 2016) ("[T]he ALJ has a duty to recontact the treating physician for clarification if the treating physician's opinion is unclear."); *but see Cichocki v. Astrue*, 534 Fed. Appx. 71, 75 (2d Cir. 2013) (summary order) ("Because [the doctor's] medical source statement conflicted with his own treatment notes, the ALJ was not required to afford his opinion controlling weight."); *Felice v. Saul*, No. 18-CV-00603 (ADS), 2019 WL 6682319, at *8 (E.D.N.Y. Dec. 5,

2019) (upholding an ALJ decision to assign less weight to "opinions of [] treating physicians [that] were either conclusory, inconsistent with their own treatment notes, and/or inconsistent with the overall record.").

Finally, the ALJ's observation that "Dr. Rangaswamy's opinion [was] inconsistent with the overall evidence" (Tr. at 31) is too conclusory to support giving "little weight" to that opinion. *See, e.g.*, *Rivera v. Comm'r of Soc. Sec.*, No. 1:19-CV-4802 (FB), 2021 WL 2634901, at *2 (E.D.N.Y. June 25, 2021) ("[T]he Commissioner's ALJs are not free to disregard a treating physician's opinion based on a conclusory statement that it is inconsistent with the overall evidence in the record and the opinions of other providers." (citations and quotations omitted)).

## II.     The ALJ failed to Adequately Develop the Administrative Record

### A.       The ALJ's Duty to Develop the Record

"[B]ecause a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted).  "SSA regulations provide that an ALJ 'shall inquire fully into the matters at issue and shall receive in evidence the testimony of witnesses and any documents which are relevant and material to such matters.'"  *Id.* (quoting 20 C.F.R. § 702.338).  "If the administrative law judge believes that there is relevant and material evidence available which has not been presented at the hearing, he may adjourn the hearing or, at any time, prior to the filing of the compensation order, reopen the hearing for the receipt of such evidence." *Id.* (quoting 20 C.F.R. § 702.338).  Thus, "[i]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations and quotations omitted).  This duty exists "[e]ven when a claimant is represented by counsel."  *Id.* at 112 (citations omitted).  "Legal errors regarding the

16

duty to develop the record warrant remand." *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) (collecting cases).

### B.  Analysis

As noted, "[i]nstead of largely disregarding Dr. [Rangaswamy]'s entire opinion, the ALJ, consistent with her duty to develop the record, should have affirmatively sought [] a function-by-function analysis from him."  *See Parker*, 2019 WL 4386050, at *8 (citations omitted).  Or, "[h]aving identified the lack of a function-by-function analysis from a treating physician in the record, the ALJ also could have sought a function-by-function analysis from other apparent treating physicians." *Id.* (citations omitted); *see also Rocchio v. Astrue*, No. 08-CV-3796 (JSR) (FM), 2010 WL 5563842, at * 11 (S.D.N.Y. Nov. 19, 2010) ("Because of the considerable weight ordinarily accorded to the opinions of treating physicians, an ALJ's duty to develop the record on this issue is all the more important" (citations and quotations omitted)), *report and recommendation adopted*, 2011 WL 1197752 (S.D.N.Y. Mar. 28, 2011).

Defendant argues that "[t]he record in this case is complete, and remand is not required because Plaintiff would like different evidence."  (Def. Br., Dkt. 18-1, at 23.)  But by noting the significance and absence of "an in-depth function-by-function analysis of [Plaintiff's] abilities and limitations" (Tr. at 31), the ALJ showed that, for purposes of her decision, the record was not complete.  Although Defendant is right that "[t]he ALJ's duty to develop the record is not 'infinite'" (Def. Br., Dkt. 18-1, at 23 (quoting *Tatelman v. Colvin*, 296 F. Supp. 3d 608, 612 (W.D.N.Y. 2017)), the ALJ cannot use "the absence of evidence to draw an adverse inference," *cf. Ligon v. Astrue*, No. 11-CV-0162 (JG), 2012 WL 6005771, at *20 (E.D.N.Y. Dec. 3, 2012) ("If the ALJ believed that doctors may have evaluated [the plaintiff] using the wrong standard, he should have asked the doctors for clarification[.]"), especially where, as here, there is some evidence in the record supporting the treating physician's opinion.  "[T]he ALJ's duty to develop

17

the record is further enhanced when the disability in question is a psychiatric impairment."

*Bernadel v. Comm'r of Soc. Sec.*, No. 14-CV-5170 (PKC), 2015 WL 5719725, at *11 (E.D.N.Y. Sept. 29, 2015) (citation and brackets omitted).[8]

## CONCLUSION

For these reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.  The Commissioner's decision is remanded for further consideration consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: September 13, 2021
      Brooklyn, New York

---

[8] Plaintiff also argues that "Dr. Gelin's report should [have been] assigned no weight and his report should not have been admitted into the record" because "his medical license was [] under probation at the time he examined [her]."  (Pl. Br., Dkt. 15, at ECF 26.)  But SSA regulations prohibit the ALJ only from using "any individual . . . whose license to provide health care services is currently revoked or suspended . . . or who, until a final determination is made, has surrendered such a license while formal disciplinary proceedings involving professional conduct are pending." 20 C.F.R. § 404.1503a.  Although Dr. Gelin was on probation when he examined Plaintiff, there is no evidence that his license had been surrendered or was currently suspended or revoked.  (*See* Pl. Br., Dkt. 15, at ECF 30–52.)  Regardless, the ALJ may consider this issue on remand.